# Holland & Knight

31 West 52nd Street | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

Jonathan N. Halpern
+1 212-513-3512
Jonathan.Halpern@hklaw.com

October 13, 2020

**VIA ECF**

Honorable Richard J. Sullivan
United States Circuit Judge
United States Court of Appeals Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

>    Re:    *In re: Application of Gorsoan Limited, et al.*
>           **(Case No. 17-cv-5912)**

Dear Judge Sullivan:

The parties respectfully submit this joint letter in response to the Court's Order of September 28, 2020, which directed them to set forth "their positions as to the next steps required in this matter and whether it can be closed."  Each of their positions is set forth below.  The parties exchanged their respective portions of this letter simultaneously and thus have not had an opportunity to review or respond to points or arguments made by the other.  The parties therefore request, subject to the Court's approval, the opportunity to respond as necessary by no later than October 20, 2020.

**Petitioner Gorsoan's Position:**

>    **I. Introduction**

Bullock's Court-Ordered production of documents pursuant to the protocol ("Bullock Email Production"), certain references therein and the absence of other responsive documents warrant additional steps, as set forth below.  They also raise issues concerning ongoing compliance with the Court's Orders and the need for additional relief for Bullock to satisfy her obligations to Gorsoan under Section 1782.  Specifically, Gorsoan respectfully requests that the Court direct Bullock within 30 days to produce:  (i) all account statements of the Six Bullock Banks, as defined herein, as well as for any successor or transferee accounts, from August 8, 2012, through the present; (ii) all documents concerning a maximum of 20 assets and/or payment obligations (referred to in the Bullock Email Production) that Gorsoan will identify for Bullock within five days; and (iii) all documents concerning Landmark Trust, irrespective of their form or the date they were created.  In addition, Gorsoan respectfully requests that the Court order Bullock's deposition for two weeks after the requested supplemental production.

Anchorage | Atlanta | Austin | Boston | Charlotte | Chicago | Dallas | Denver | Fort Lauderdale | Houston | Jacksonville | Lakeland
Los Angeles | Miami | New York | Orlando | Philadelphia | Portland | San Francisco | Stamford | Tallahassee | Tampa | Tysons
Washington, D.C. | West Palm Beach

As a preliminary matter, the selection of documents that Bullock finally made available this summer – nearly seven years after Judge Gardephe initially ordered production of documents – has inherent limitations. First, the documents produced were subject to a search-term protocol, long in the making, which was inherently restricted. By design, the search was intended to capture responsive documents only from two Bullock email accounts. As a result, the search-term "hits" represent but a subset of potentially responsive documents. For example, the production fails to include certain categories of records, such as bank statements and real property records for assets valued at more than 10,000 euros – subjects of document withholding that were raised in a Court conference three years ago (Doc. No. 10, Sept. 2017 Conf. Tr. at 3:3-4:15, cited in Doc. 66 at 3), and which Your Honor noted in the Court's June 15, 2020 Opinion. In addition, to date, no Landmark Trust documents have been produced.

Second, the restricted search has been rendered further diminished as a consequence of Bullock's campaign of dilatory tactics and obstructive conduct and flouting the Court's Orders. The delays Bullock engineered have been so protracted that the search terms – which began to be negotiated years ago – ultimately were applied to records her counsel collected <u>nearly four years ago</u>. (Bullock's counsel has advised that the Bullock email accounts were imaged on or about November 17, 2016.) As a consequence, the production is, at best, only partially timely. Although the production has generated relevant information about the historic existence and disposition of Bullock assets (as of November 2016), a document review indicates gaps or incompleteness and the potential for additional responsive documents. Fundamental questions are raised about the existence and location of referenced or traceable assets -- or assets still unidentified in the last four years.

Third, the production – limited to the email search protocol – contains no hard-copy documents. Thus, even if the electronic search came up empty, no other document searches were undertaken, such as for hard-copy documents or electronic documents accessible outside of Bullock's two email accounts. For example, no search of Landmark Trust documents has been undertaken – or at least disclosed – apart from unsuccessfully applying the term "Landmark" in the email search. By contrast, a limited number of hard-copy documents had been produced in the past. In 2018, following Bullock's first scheduled deposition, Bullock's counsel did produce pdfs of what appear to be three hard-copy documents relating to the sale of the Southampton property. Until recently, and pending Bullock's production and Gorsoan's subsequent review, the issue of producing post-2016 and hard-copy documents had been unaddressed. Recently, however, Bullock has asserted that producing the non-privileged hits from the agreed-upon search terms fully satisfies her obligations and that she is not required to take any additional steps. A targeted supplemental search for records concerning accounts and assets implicated in the document production is nonetheless warranted. Gorsoan respectfully proposes submitting a list of accounts and assets for the follow-up record search, including post-November 17, 2016 and hard-copy documents. Conducting such a limited search should be able to be completed expeditiously and satisfy Bullock's document production obligations pursuant to Gorsoan's Section 1782 application.

**II. Discovery (Non-Produced) Implicated by the Summer 2020 Production**

A. <u>Additional Documents Required</u>

*Financial Institutions*

The Bullock Email Production identifies accounts Bullock held and controlled at six banks (the "Six Bullock Banks") as of 2016, mostly for prior years. Bullock appears to have held multiple accounts at one or more of these banks. The records make clear that Bullock directed and received payments and engaged in other bank activity for herself and her family and in connection with real estate holdings, including relating to a residence, Southampton property, a mortgage and two hotels, apart from other assets and payments that have not been disclosed.[1] Significant responsive information is conveyed in the documents. However, identifying funds and other assets traceable to the accounts in the Six Bullock Banks has been stymied by the nature and limitations of the production – and, of course, over the years by Bullock herself. The Bullock Email Production suggests the existence of additional responsive documents -- presumably outside the protocol-generated documents -- that Bullock has had in her possession, custody or control, since November 2016, and independent of her two email accounts.

Left unknown and unknowable from the limited email production is a complete or accurate picture of dispositions, transfers, deposits or other activity with respect to the funds or assets referred to in the Six Bullock Bank documents. For example, except for a few email attachments, bank statements were not produced – whether in electronic or hard-copy format. The statements for accounts Bullock has held or for which she is a signatory should be readily and quickly accessible. Accordingly, it is respectfully requested that account statements of the Six Bullock Banks as well as for any successor or transferee accounts be produced from August 8, 2012 (the start date under the protocol) through the present.

*Additional Assets and Payments*

The Bullock Email Production refers to certain assets and payments – or at least payment obligations -- that previously have been identified to the Court, such as Bullock's residence and other Manhattan real estate, Southampton properties and payments for her daughter's private school tuition and Porsche. Additional categories of significant non-real estate assets also have been identified in the documents. The limited email production necessarily gives rise to at least two sets of unaddressed questions: (i) whether the assets identified in the Bullock Email Production have been sold, transferred or otherwise disposed of, and, if so, to whom, when and for what amounts; and (ii) what accounts were used to receive, transfer or effect payment for the assets or payment obligations. These issues, at the core of the Section 1782 litigation, would be expected to be reflected in existing records, if any, that Bullock has had or can access. Accordingly, based on the information in the Bullock Email Production, Gorsoan respectfully

---

[1] If the Court desires additional information about specific bank activity, assets or funds implicated in Bullock's production, Gorsoan would be pleased to submit a more detailed submission under Court-approved seal.

requests that Bullock provide documents, from August 8, 2012, to date, concerning a maximum of 20 assets and/or payment obligations implicated by the Bullock Email Production and that Gorsoan will identify. With the Court's approval, the documents to be produced would encompass, among other Bullock assets and payment obligations, the following of which the Court is already aware: Manhattan residential real estate; Southampton properties; hotels in France; payment of private school tuition for Bullock's daughter; and payment of a Porsche for Bullock's daughter.[2]

*Landmark Trust*

Notwithstanding the Court's Order to Bullock more than two years ago "to produce documents relating to the Landmark Trust and to conduct further document review." (Doc. No. 44 at 2; *see also* Doc. No. 66 at 7.) Landmark Trust documents have not been provided or identified. Nor has their existence been acknowledged. Gorsoan counsel has emphasized the requirement that Bullock comply with the Court's orders regarding Landmark Trust. While agreeing that "Landmark" should be included among the search terms to run under the protocol, Gorsoan counsel had emphasized to Bullock's counsel the need to comply with the Court's Order regarding Bullock's production of Landmark Trust documents: "The Court had previously ordered that Bullock produce all documents concerning the Landmark Trust (Dkt. No. 44), so could you please ensure that all of those documents are included among the documents searched and produced." *See* Ex. 1 attached, email dated June 25, 2020.

Apparently, the "Landmark" term failed to yield any hits, and, accordingly, no Landmark Trust documents were included in the Bullock Email Production. As a result, in September, Gorsoan counsel requested that counsel inquire of Bullock as to the existence of any Landmark Trust documents. Bullock counsel has so far declined to disclose whether he has done so, whether any such documents exist or what other searches reasonably could be conducted to identify Landmark Trust documents in Bullock's possession, custody or control. Bullock, by her counsel, has taken the position that -- in their view -- in accord with the Court's Orders or directions,[3] abiding by the search-term protocol obviates any obligation for Bullock to make any further inquiry or production concerning Landmark Trust documents from any other source. Gorsoan respectfully requests that the Landmark Trust documents be produced, pursuant to the Court's Order, irrespective of their form or the date the documents were created.

B. Bullock's Deposition

To date, Bullock has successfully dodged her obligation to be deposed under Section 1782. The Court is painfully familiar with the facts and circumstances concerning Bullock's conduct, including her treatment of the Court's Orders to be deposed and produce documents, which the

---

[2] Upon the Court's authorization, Gorsoan will be pleased to submit to the Court under Court-approved seal the complete list of assets and Bullock payment obligations for Bullock's supplemental document production.
[3] In Gorsoan's view, the position Bullock asserts appears to be taken notwithstanding the Court's Orders and directions.

Court chronicled in its June 15th Opinion and Order. (Doc. No. 66.) In her first deposition "seating," Bullock vastly proclaimed ignorance and offered no meaningful responses; she repeatedly asserted the 5th Amendment at the second deposition. Moreover, with respect to producing documents and Bullock's eventual claim of act of production, the Court determined "that Bullock intentionally delayed asserting her privilege for strategic advantage, resulting in significant prejudice to Gorsoan." (Court Op. and Order at 12; Doc. No. 66.). Indeed, in ordering document production and rejecting her act of production claim, as untimely and waived, the Court held that Bullock's belated assertion of her rights "smacks of 'procedural gamesmanship' and 'dilatory tactics . . . designed to frustrate Gorsoan, rather than to protect Bullock," and that her conduct consequently prejudiced Gorsoan. (*Id*. at 14.) (Internal citations omitted.)

Bullock did not take issue with the Court's ruling, notifying Gorsoan's counsel in June 2020 that Bullock did "not anticipate asserting a Fifth Amendment privilege." (Ex. 1) attached hereto, email dated June 24, 2020.)[4] That Bullock finally has produced responsive documents as part of her Court-ordered obligation under Section 1782 should not be now be misused to shield her from another core obligation: being deposed, especially on the subject of the documents she just produced. While Bullock may claim an intention to assert the 5th Amendment (again), it is far from clear that indiscriminate invocations will be upheld for each question that is posed. Especially with respect to specific documents that Bullock now has produced, lines of inquiry may be developed that would bar a proper invocation of Bullock's rights. As with the second scheduled deposition, the mere announcement of an intention to invoke does not empower Bullock to skirt a deposition. Moreover, Bullock's antics to date hardly justify an exercise of the Court's discretion in her favor; just the opposite. Accordingly, Gorsoan respectfully requests that Bullock's deposition be noticed after the requested supplemental production has been provided.[5]

### III. Conclusion

For the foregoing reasons, Gorsoan respectfully requests that the Court direct Bullock within 30 days to produce: (i) all account statements of the Six Bullock Banks as well as for any successor or transferee accounts, from August 8, 2012, through the present; (ii) all documents concerning a maximum of 20 assets and/or payment obligations (referred to in the Bullock Email Production) that Gorsoan will identify for Bullock within five days following an Order of the Court; and (iii) all documents concerning Landmark Trust, irrespective of their form or the date they were created.

---

[4] Nor did Bullock move for reconsideration or appeal the Court's ruling.
[5] If the Court desires, Gorsoan would be pleased to provide pre-deposition briefing with respect to specific lines of inquiry posed at the deposition and the applicability of Bullock's proposed assertion of her rights.

In addition, the Court is respectfully requested to order Bullock's deposition to be noticed for two weeks after the completion of Bullock's supplemental production, as ordered by the Court.

**Respondent Janna Bullock's Position**:

Ms. Bullock respectfully submits the following statement of position in response to the Court's Order of September 28, 2020.

### I. Ms. Bullock Has Complied With All Of Her Outstanding Obligations As Set Forth In The Court's Order Of June 15, 2020

On August 8, 2018, the Court directed Gorsoan to submit a letter "apprising the Court of all remaining issues in this matter." (Minute Entry, Aug. 8, 2018.) In its September 7, 2018 letter, Gorsoan purported to do just that. Its letter raised four discrete issues: (1) Gorsoan asked the Court to "issue findings" and draw an "adverse inference" based on Bullock's invocation of her Fifth Amendment rights in response to deposition questions; (2) Gorsoan sought the production of additional electronic documents pursuant a protocol previously agreed upon by the parties; (3) Gorsoan sought spoliation sanctions with respect to the contents of a laptop computer; and (4) Gorsoan sought sanctions for cost and time spent pursuing discovery. (Doc. No. 55, pp. 1-6.)

At the time it made this application, Gorsoan knew that the agreed protocol was limited to the review and production of documents from Ms. Bullock's email accounts. (Doc. No. 55, pp. 222-29.) Gorsoan also knew that Ms. Bullock, who produced a set of Landmark Trust documents before her second deposition on August 8, 2018, had denied having any additional Landmark Trust documents subject to production under the Court's June 6, 2018 order. And Gorsoan knew that Ms. Bullock had no intention of subjecting herself to a further deposition absent Court order. Nonetheless, Gorsoan limited its application for further discovery to the agreed protocol for searching Ms. Bullock's email accounts. It did not seek a further production of Landmark Trust documents. And it did not seek a further deposition. And Gorsoan did not breath a word about these subjects in its subsequent letters to the Court, including in its December 19, 2019 letter, which purported to address "all open issues regarding Ms. Bullock's repeated discovery violations." (Doc. No. 61; *see also* Doc. No. 59, 63.)

On June 15, 2020, the Court ruled on Gorsoan's September 7, 2018 letter application. The Court (1) denied Gorsoan's request that it make findings of fact; (2) granted Gorsoan's request to compel discovery and ordered Ms. Bullock to carry out "the document review protocol" previously agreed to by the parties; (3) awarded spoliation sanctions; and (4) granted in part Gorsoan's request for other sanctions. (Doc. No. 66.)

Ms. Bullock has since complied with all of her outstanding obligations. She fulfilled her obligations with respect to the awards of sanctions. And she, through her counsel, completed her obligations under the document review protocol agreed upon by the parties.

Although the terms of the document review protocol had been agreed upon as far back as August 2018, including the search terms that would be applied, the parties confirmed the scope of the required review before resuming the process. Emails memorialize the parties' agreement in plain and unambiguous terms. (See Exhibit A.) They specify the materials required to be searched (Ms. Bullock's email accounts), the date range to be applied (August 8, 2012 through November 17, 2016), and the individual search terms that would be used (78 terms, generated from a list originally prepared by Gorsoan). Gorsoan also requested that Bullock search for Landmark Trust documents and Ms. Bullock agreed to add the term "landmark" to the list of search terms, even though the parties had addressed the issue of Landmark Trust documents in 2018 and thus no corresponding search term had been included in the previously agreed protocol.

Counsel for Bullock made a rolling production, complete as of August 14, 2020, that included 5,195 documents, totaling 17,609 pages, accompanied by a privilege log. In the interest of closure and to avoid any further issues, counsel for Bullock erred on the side of including any potentially responsive document.

Bullock respectfully submits that she has now complied with all her outstanding obligations, and that therefore this matter can now be closed.

### II. Gorsoan Now Seeks To Raise A Host Of New Issues That Exceed The Scope Of The Court's June 15, 2020 Order

After completing the production of documents and a privilege log on August 14, 2020, counsel for Bullock received no response from Gorsoan until after September 23, 2020, when the Court directed the parties to submit a joint letter "setting forth their positions as to the next steps required in this matter and whether it can be closed." (Doc. No. 75.)

The parties have had two meet and confer sessions by telephone since the Court's request for a joint letter. In those conversations, Gorsoan has been represented by Caroline Donovan of Foley Hoag LLP, who has been counsel to Gorsoan throughout much of these proceedings. Ms. Donovan was joined by Jonathan Halpern of Holland & Knight LLP, who has only recently become involved in the case, and who had no role in any discussions until after Bullock's August 2020 document production was complete.

In a first call, on September 25, Gorsoan requested a two-week extension to continue its review of the production, to which Bullock agreed. Gorsoan also inquired about the existence of any Landmark Trust documents outside of those that would have been covered by the document protocol. In addition, Gorsoan alluded to the possibility that it would seek to take Ms. Bullock's deposition again. These issues were not fully discussed and the parties agreed to have a second call.

In a second call, on October 5, Gorsoan raised questions about various categories of documents that were beyond the scope of the agreed upon protocol. Gorsoan again stated that it would seek to take Ms. Bullock's deposition, and Ms. Bullock's counsel indicated that it would oppose any

such request. Ms. Bullock's counsel asked repeatedly if Gorsoan had any issues it intended to raise with the Court concerning Ms. Bullock's August 2020 document production. Gorsoan then noted that it had identified several emails among the thousands produced that appeared to be missing attachments. Gorsoan also noted that some of the emails referred to various bank accounts and asked if Ms. Bullock would be willing to produce copies of bank statements. Gorsoan stated that it planned to send an email providing further particulars so that counsel for Bullock could consider them and respond.

Gorsoan never provided an email detailing any particular items of concern with respect to the August 2020 document production. Instead, it listed several categories of documents – well beyond the scope of the agreed-upon search – that it now apparently plans to press for. As set forth in an October 9, 2020 email from Gorsoan, these include "(1) documents after Nov. 2016; (2) specific documents not included in the production, including bank statements; (3) non-electronic collection of documents; [and] (4) documents concerning the Landmark Trust." Gorsoan again also requested that Ms. Bullock sit for a further deposition.

Gorsoan raised none of these additional categories of documents in its September 7, 2018 letter which purported to advise the Court of "all" remaining issues. Nor did Gorsoan raise these additional categories of documents with counsel for Ms. Bullock when negotiating the agreed-upon document review protocol in 2018 or when confirming its scope in June 2020. (In 2020, Gorsoan inquired about Landmark Trust documents and agreed that it would suffice for Ms. Bullock to include the term "landmark" among the search terms.) The agreement between counsel reached in 2018 was based on the understanding that Gorsoan would be satisfied if the agreed-upon search terms were pursued. Gorsoan said nothing to the contrary when the scope of the review protocol was revisited and confirmed in June 2020. Moreover, questions about bank statements, non-electronic documents, and documents concerning the Landmark Trust, had all arisen before the Court sought a list of "all remaining issues" on August 8, 2018, and before Gorsoan purportedly provided such a list on September 7, 2018. Had Gorsoan been inclined to press for documents that post-date November 2016, it could have said so on those occasions as well. In short, Gorsoan's new requests retread old territory, go well beyond the relief it sought in its September 7, 2018 letter purporting to "appris[e] the Court of all remaining issues in this matter," and beyond the relief the Court entered when ruling on that application. Gorsoan's new requests also contravene the clear and express agreements reached by the parties. Out of an abundance of caution, and mindful that failure to promptly assert such rights can be construed as waiver, Ms. Bullock also asserts her act of production privilege insofar as it continues to apply to any production of documents outside of the agreed protocol.

A third deposition of Ms. Bullock is also unwarranted, given Gorsoan's two prior opportunities to depose her and its failure to raise this issue in its September 7, 2018 letter to the Court. In any third deposition, Ms. Bullock would continue to assert her Fifth Amendment rights.

### III. Ms. Bullock Respectfully Reserves The Right To Respond To Gorsoan's Arguments

As noted above, Ms. Bullock has stated her position without the benefit of reviewing or responding to any of the particular arguments Gorsoan has made. Accordingly, Ms. Bullock respectfully requests the opportunity to respond to Gorsoan's arguments as necessary and insofar as her portion of this letter does not address them.

Respectfully submitted,

 /s/ Jonathan Bach
Jonathan Bach
Shapiro Arato Bach LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
Tel: (212) 257-4897
Fax: (212) 202-6417
bach@shapiroarato.com
*Counsel for Respondent Janna Bullock*

/s/ Jonathan Halpern
Warren E. Gluck
Jonathan N. Halpern
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 513-3512
Fax: (212) 385-9010
jonathan.halpern@hklaw.com
warren.gluck@hklaw.com

/s/ Caroline S. Donovan
Kenneth S. Leonetti
Caroline S. Donovan
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1165
Fax: (617) 832-7000
kleonetti@foleyhoag.com
cdonovan@foleyhoag.com

*Counsel for Petitioners Gorsoan Limited and Gazprombank SJC*

cc: ECF Counsel (via ECF)