UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of GORSOAN LIMITED and
GAZPROMBANK OJSC for an Order Pursuant
to 28 U.S.C. § 1782 to Conduct Discovery for
Use in a Foreign Proceeding.

No. 17-cv-5912 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Now pending before the Court are several requests by Petitioners Gazprombank OJSC and its assignee Gorsoan Limited (together, "Gorsoan") for additional discovery in connection with Gorsoan's long-running dispute with Janna Bullock. (Doc. Nos. 78, 83.) For the reasons that follow, Gorsoan's requests are GRANTED IN PART and DENIED IN PART.

## I.  BACKGROUND

The genesis of this case and the developments leading to the present discovery dispute are more fully described in the Court's June 15, 2020 opinion and order. (Doc. No. 66 ("Op.").) In a nutshell, Gorsoan commenced proceedings under 28 U.S.C. § 1782 in November 2013 in order to secure discovery relevant to a dispute with Bullock that is currently pending in Cyprus. (Op. at 1–2.) Since then, Bullock has done everything in her power to frustrate Gorsoan's efforts and to avoid her legal obligations.

Bullock initially claimed to have "fully complied with her document discovery obligations in January 2017." (Doc. No. 6 at 4; *see also* Doc. No. 10 at 14.) But following Bullock's deposition in February 2018, during which "[h]er testimony was almost comical in its implausibility and flagrant obfuscation," it became apparent that this representation was false. (Op. at 3.) "After Gorsoan suspended the deposition due to concerns over the veracity of Bullock's answers, Bullock's counsel produced – for the first time – three documents related to the sale of"

a property in Southampton, New York, "including a Bargain and Sale Deed that Bullock herself had signed on behalf of the seller." (*Id.* at 6 (internal citations omitted).)

At a conference two months later, the Court held Bullock in contempt and directed the parties to confer on a discovery protocol that would cover the remaining relevant, but unproduced material in Bullock's possession. (*Id.* at 6–7.) In doing so, the Court expressly ordered Bullock to "produce all documents concerning the Landmark Trust," the entity that legally owned the Southampton property prior to its sale. (*Id.* at 7 (internal quotation marks omitted).) Following that conference, the parties began a multi-month-long negotiation about the contours of that protocol. (Doc Nos. 33, 41, 44; *see also* Doc. No. 55 at 222–28.)

In May 2018, after reaching an impasse with Bullock, Gorsoan submitted a proposed discovery protocol to the Court, and asked the Court to order Bullock to comply with its terms. (Doc. No. 41 at 2–3; Doc. No. 41-2.) As relevant here, that protocol would have required Bullock to collect emails generated between August 2012 and May 2018, across five different email accounts. (Doc. No. 41-2 at 2.) The Court denied Gorsoan's request and directed the parties to return to the negotiating table; but the Court made clear that Gorsoan could renew its motion if the parties were still unable to reach consensus. (Doc. No. 44 at 1.)

In the wake of that decision, the parties resumed their discussions. And, finally, on August 5, 2018, after Gorsoan agreed to whittle down its list of search terms and limit the discovery protocol to two email accounts, the parties struck a deal. (Doc. No. 55 at 222–28.) But having been burned by Bullock before, Gorsoan was careful to "reserve[] all rights in this matter should Bullock's production again prove incomplete." (*Id.* at 228.)

Unfortunately, the peace did not last. At her second deposition only three days later, Bullock not only refused to answer any substantive questions on Fifth Amendment grounds, but

took the novel position that "there may [also] be Fifth Amendment issues with respect to the document production." (Op. at 8 (internal quotation marks omitted).) Later that month, Bullock formally "assert[ed] her Fifth Amendment rights with respect to any remaining document production obligations." (Doc. No. 55 at 231.) So, in September 2018, Gorsoan submitted a letter to the Court, requesting that the Court order Bullock to produce documents, among other relief aimed at curbing Bullock's discovery chicanery. (*Id.* at 1–6.) Gorsoan did not, however, seek to expand the scope of document discovery beyond the terms agreed to by the parties in August 2018 nor did Gorsoan request another deposition of Bullock.

In June 2020, the Court issued an opinion and order granting in part and denying in part the relief sought by Gorsoan. (Doc. No. 66.) Among the relief it granted, the Court determined that Bullock had waived any Fifth Amendment act-of-production privilege, and ordered her "to resume the document review protocol previously agreed to by the parties" in August 2018. (Op. at 15.)

A little over a week later, Bullock's counsel reached out to Gorsoan to confirm that the parties shared a mutual understanding of the review protocol that would be employed. (Doc. No. 78-2 at 3.) Specifically, Bullock's counsel stated that they would search emails collected from two accounts, and indicated that the universe of emails was limited to those collected in November 2016. (*Id.*) Gorsoan's counsel agreed with that proposal, with the caveat that they expected that "all documents concerning the Landmark Trust . . . [would be] included among the documents searched and produced." (*Id.* at 2.) Bullock agreed to run "landmark" as an additional search term and, on June 29, 2020, the parties finally agreed to the discovery protocol. (*Id.* at 1.) Bullock completed her productions pursuant to that protocol on August 14, 2020. (Doc. No. 78 at 7.)

A little over a month later, on September 23, 2020, the Court ordered the parties to apprise it of "their positions as to the next steps required in this matter." (Doc. No. 75.) In response, the parties submitted a joint letter that identified the discovery disputes now pending before the Court. (Doc. No. 78.) The parties have since submitted additional filings further clarifying their positions. (Doc. Nos. 80, 83, 85, 87.)

Specifically, Gorsoan requests three additional sets of documents that were not included in Bullock's past productions: (1) all account statements created between August 8, 2012 through the present for banks accounts owned by Bullock at six specific banks (and any successor or transferee accounts) (Doc. No. 78 at 3; *see also* Doc. No. 83 at 1); (2) all documents created between August 8, 2012 through the present concerning 17 of Bullock's assets and/or payment obligations (Doc. No. 78 at 3–4; Doc. No. 83 at 1–2); and (3) all documents, irrespective of their creation dates, concerning the Landmark Trust (Doc. No. 78 at 4). In addition, Gorsoan requests that Bullock sit for a third deposition once those additional documents have been produced. (*Id.* at 4–5.)

Bullock has refused all these requests, putting forward a series of arguments. First, Bullock says that these new requests are barred by the parties' agreement in June 2020 regarding the scope of Bullock's email production. (Doc. No. 78 at 7–8; Doc. No. 80 at 6–9; Doc. No. 85 at 1–2.) Relatedly, Bullock asserts that if Gorsoan had intended to preserve these discovery requests, it should have raised them earlier. (*See, e.g.*, Doc. No. 80 at 7–8.) Second, Bullock says that any discovery into records created after November 2016 is not "for use" in the Cyprus proceeding and thus falls outside the boundaries of discovery permitted by § 1782. (Doc. No. 85 at 3.) Third, Bullock again takes the position that Gorsoan's discovery requests implicate her Fifth Amendment act-of-production privilege. (*Id.*) And fourth, Bullock argues that Gorsoan not only has sufficient

information on these topics and does not need additional discovery, but that Gorsoan's requests exceed the scope of the underlying subpoena.[1]  (*Id.* at 3–6.)

## II.  DISCUSSION

The most natural starting point is to assess whether Gorsoan's pending discovery requests are precluded either because they fall outside the parties' recently agreed to discovery protocol, or because of Gorsoan's failure to raise these issues until now.

District courts have "broad discretion to direct and manage discovery." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 204 (2d Cir. 2008) (citing *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004)); *see also In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).  At the same time, however, parties are encouraged to enter into voluntary stipulations to help streamline the process.  And while courts are "not bound by any limitations agreed to by the [p]arties," *Pinks v. M&T Bank Corp.*, No. 13-cv-1730 (LAK) (RLE), 2016 WL 1216813, at *2 (S.D.N.Y. Mar. 25, 2016), such stipulations are regularly enforced, *see Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1124 (2d Cir. 1993) *see also In re XPO Logistics, Inc.*, No. 15-misc-205 (LGS), 2017 WL 6343689, at *7 (S.D.N.Y. Dec. 11, 2017).

In this case, there are a few competing considerations at play.  In Gorsoan's favor is the fact that Bullock has repeatedly abused the discovery process in an effort to improperly stymie Gorsoan's efforts.  Moreover, at no point did Gorsoan ever indicate that this latest round of email productions would satisfy *all* of Bullock's discovery obligations.

But Bullock has a point that Gorsoan agreed to the parties' most-recent email review protocol understanding full well that it was limited to two email accounts, and that it would include

---

[1] Bullock also makes an additional argument that discovery should not be permitted in light of the risk that Gorsoan might share that information with the Russian State to aid Russia in its own pursuit of Bullock's assets. (Doc. No. 85 at 4.)  But Bullock's speculation, without any evidence, is not reason to foreclose discovery.

only emails generated through November 2016.  In addition, the Court has made clear that the duration of this matter – having been pending since November 2013 – militates against any significant expansion of the scope or schedule of discovery.  (*See, e.g.*, Doc. No. 49 at 2.)

Having considered these competing factors (and everything else before it), the Court determines that Gorsoan's production requests are partially precluded.  In particular, the Court concludes that the parties' agreement on June 29, 2020 governs the scope of any remaining email review required of Bullock in this case.  Although Gorsoan bemoans the "inherently restricted" search-term protocols used to identify relevant emails and the fact that the production was limited to emails "collected nearly four years ago" (Doc. No. 78 at 2 (emphasis omitted)), Gorsoan was aware of those facts when it agreed to the discovery protocol in August 2018 and again in June 2020.  So Gorsoan cannot now complain about the deal it struck.[2]

That does not mean, however, that Gorsoan is entirely out of luck.  The Court does not interpret the parties' email review protocol as closing the door on all other forms of discovery – namely, the collection, review, and production of hardcopy or electronic documents.  And given the Court's limited trust in Bullock's candor, the Court agrees with Gorsoan that some additional, limited discovery is likely warranted.  Before ordering Bullock to collect and produce additional documents, however, the Court must consider her remaining arguments.

First, Bullock suggests that any discovery post-dating November 2016 is not "for use" in a foreign proceeding.  (Doc. No. 85 at 3.)  She says that such information is relevant only to identifying assets that can be collected as part of a judgment in Cyprus court, and so is not proper

---

[2] Of course, Gorsoan would not be left without recourse if it had reason to believe that Bullock had failed to live up to the mutually agreed upon protocol.  But that is not what this dispute is about.  Based on Gorsoan's submissions, it is apparent that Gorsoan's beef is not with Bullock's compliance with the discovery protocol, but with the scope of the protocol itself.  (*See, e.g.*, Doc. No. 87 at 2.)  Unfortunately for Gorsoan, it voluntarily agreed to that protocol and the Court will hold it to its bargain.

fodder for a § 1782 subpoena.  (*Id.*)  But Judge Abrams, in a related proceeding, already rejected this "overly narrow" conception of "what a § 1782 applicant must show to satisfy the 'for use' requirement."  *In re Gorsoan Ltd.*, 435 F. Supp. 3d 589, 600 (S.D.N.Y. 2020), *appeal docketed*, No. 20-680 (2d Cir. Feb. 21, 2020).  This discovery directly bears on Bullock's compliance with the Cyprus court's asset freeze order, and so will offer Gorsoan at least "some advantage" in that proceeding.  *Id.* at 601 (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).  In fact, should this discovery show that Bullock flouted the Cyprus court's order, Gorsoan indicates that it can seek a preclusive contempt order in that court, which could hamstring Bullock's defenses to Gorsoan's fraud claim.  (Doc. No. 87 at 3.)  That is enough for this request to fall within the scope of § 1782.  *See Gorsoan*, 435 F. Supp. 3d at 599–601; *see also In re BNP Paribas Jersey Tr. Corp. Ltd.*, No. 18-mc-047 (PAC), 2018 WL 895675, at *2 (S.D.N.Y. Feb. 14, 2018) (holding that discovery is "for use" in a foreign tribunal where it "may show whether additional measures should be taken to restrain [the party's] assets or whether [the party] should be held in contempt of the [foreign tribunal's] [f]reezing and [d]isclosure [o]rder").  And, in any event, Bullock's argument is undercut by the fact that she has already produced documents created after November 2016, and did not, at that time, object that the production fell outside of § 1782.  (*See* Doc. No. 87 at 4 (pointing out that in 2018, Bullock produced hard copy records concerning the 2017 sale of the Southampton property).)

Next, Bullock states that she is asserting her Fifth Amendment act-of-production privilege and objects to any further production on that basis.  (Doc. No. 85 at 3.)  She argues that while the Court previously held that she had waived this privilege, that finding concerned only Gorsoan's prior discovery requests and cannot apply to these new requests, which were not made until October 2020.  (*Id.*)  The problem with Bullock's position, though, is that it fails to explain why,

7

in light of her recent productions this year, her act-of-production privilege is even implicated. Specifically, Bullock's position on this issue has been that any additional productions could subject her to criminal prosecution given that the Court previously raised "the prospect of a potential perjury referral based on Ms. Bullock's answers to deposition questions." (Doc. No. 57 at 3; *see also* Doc. No. 37 at 6–7, 47, 94.) But Bullock has already produced thousands of additional documents since her deposition, many of which cover the same subject matter as Gorsoan's current requests. (Doc. No. 78 at 7 (asserting that between June 2020 and August 2020, "[c]ounsel for Bullock made a rolling production . . . that included 5,195 documents, totaling 17,609 pages"); *see also* Doc. No. 87 at 3.) Accordingly, Bullock has supplied no reason to think that producing additional hardcopy or electronic documents to supplement those recent productions would do anything to increase her risk of being prosecuted on a perjury charge.

Lastly, Bullock takes the position that Gorsoan's requests either exceed the scope of the underlying subpoena or are otherwise unnecessary because Gorsoan has already received sufficient discovery on these topics. (Doc. No. 85 at 3–6.) The Court disagrees. As Gorsoan explains, there are several outstanding issues that are not answered by Bullock's existing production, all of which are fair game for discovery. (Doc. No. 87 at 4–5.) And given the broad scope of the underlying subpoena – which covers all documents related to the existence, location, ownership, and control of assets exceeding 10,000 Euros – the Court disagrees with Bullock that Gorsoan's remaining requests are too broad, particularly in light of Bullock's history of attempting to skirt her discovery obligations.

Consequently, Bullock shall produce the following categories of documents within 30 days of the date of this order:

- all account statements created between August 8, 2012 and the present that are associated with any bank accounts owned by Bullock at the six banks identified in

> Gorsoan's November 11, 2020 letter (and any successor or transferee accounts) (Doc. No. 83 at 1);

- all hard copy and electronic records, other than emails, created between August 8, 2012 and the present that relate to the 17 specific assets and/or payment obligations identified in Gorsoan's November 11, 2020 letter (*id.* at 1–2);[3] and

- all hard copy and electronic records, other than emails, related to the Landmark Trust, irrespective of the date those documents were created.

That leaves only Gorsoan's request for a third deposition of Bullock. According to Bullock, not only has Gorsoan already had "two prior opportunities to depose her," but Gorsoan's failure to raise this issue until this point has resulted in its waiver. (Doc. No. 78 at 8; *see also* Doc. No. 80 at 9.) Bullock also points out that "Gorsoan previously requested from the Court the opportunity to depose Bullock upon the completion of her document production . . . and the Court denied that request." (Doc. No. 80 at 9.) Lastly, Bullock indicates that a third deposition would likely be fruitless for Gorsoan, since Bullock intends to "continue to assert her Fifth Amendment rights." (Doc. No. 78 at 8.)

The Court disagrees and grants Gorsoan's request for a third deposition. Given that Bullock's actions resulted in neither of her prior depositions yielding usable testimony for Gorsoan (Op. 3–6, 8), the Court determines that Gorsoan's request for a third deposition is entirely reasonable. Indeed, to not permit Gorsoan the opportunity to depose Bullock again would effectively reward Bullock for her obstructionist tactics. And while Bullock is correct that the Court denied Gorsoan's request to move the date of Bullock's second deposition, that was primarily because the deposition had already been scheduled at a time of Gorsoan's choosing. (Doc. No. 49 at 2.) Finally, while Bullock suggests that she will invoke her Fifth Amendment rights during her deposition, that does not permit her to avoid her obligations; she can instead

---

[3] Although Bullock is correct that tuition payments for her daughter are not assets (Doc. No. 85 at 6), the Court agrees with Gorsoan that "documents relating to tuition payments [could] . . . reveal the underlying asset(s) used as the source(s) for the payments" (Doc. No. 87 at 5 n.3).

invoke her rights on a question-by-question basis. *See SEC v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017) ("Ordinarily, the procedure by which a deponent seeks to assert his privilege against self-incrimination is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions [s]he can without risking self-incrimination." (internal quotation marks omitted)). Nevertheless, so that any disputes over Bullock's Fifth Amendment privilege can be resolved in a timely fashion, the Court will make itself available to the parties during Bullock's deposition.

### III. Conclusion

Accordingly, Gorsoan's requests for discovery are GRANTED IN PART and DENIED IN PART. Bullock shall produce the documents identified herein within 30 days of the date of this order, and shall sit for a deposition 30 days after her remaining production obligations are completed.

SO ORDERED.

Dated:	November 23, 2020
	New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation