UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of GORSOAN LIMITED and GAZPROMBANK OJSC for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | No. 17-cv-5912 (RJS)<br>OPINION & ORDER |

RICHARD J. SULLIVAN, Circuit Judge:

For the better part of a decade, Petitioners Gazprombank OJSC and its assignee Gorsoan Limited (together, "Gorsoan") have been seeking discovery from Janna Bullock under 28 U.S.C. § 1782. Now pending before the Court is yet another dispute between the parties related to Bullock's compliance with her discovery obligations. Specifically, Gorsoan requests that the Court expand the scope of discovery in this case and order Bullock to produce various foreign language documents that, with limited exception, are held by Bullock's counsel in Switzerland. For the reasons set forth below, the Court DENIES Gorsoan's request. As a result, the Court concludes that document production is now complete, and the parties shall proceed expeditiously with Bullock's deposition.

### I.  Background

The parties' dispute extends back to at least August 2012, when Gorsoan sued Bullock and a host of other defendants in Cyprus, alleging that the defendants fraudulently diverted bond proceeds owed to Gorsoan. (Doc. No. 66 at 1.) After being frustrated by Bullock's failure to comply with the Cyprus court's orders, Gorsoan filed an application under 28 U.S.C. § 1782 in this district, seeking discovery related to that dispute. (*Id.* at 2.) Judge Gardephe quickly granted Gorsoan's request, prompting Bullock to move for reconsideration. (*Id.*; Dkt. 13-mc-397, Doc. Nos. 6, 12.)

On December 10, 2014, Judge Gardephe denied Bullock's motion and affirmed his earlier decision to grant Gorsoan discovery (the "2014 Order"). *See generally In re Gorsoan Ltd.*, No. 13-mc-397 (PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014). In so doing, Judge Gardephe concluded that § 1782 "does not authorize a court to compel a party to produce documents located abroad," and so "read [Gorsoan's subpoena] as seeking only documents located in the United States." *Id.* at *10. The Second Circuit later affirmed Judge Gardephe's decision, though it had no opportunity to consider the geographic scope of the subpoena as Gorsoan did not file a cross-appeal of its own. *See generally Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016).

Eventually, the parties' dispute came before this Court as a miscellaneous matter pursuant to Part I in October 2016. (Doc. No. 66 at 2.) Since then, the Court has had to resolve a number of discovery quarrels.

Notably, Bullock claimed that she had "fully complied with her document discovery obligations in January 2017." (Doc. No. 6 at 4; *see also* Doc. No. 88 at 1.) "But following Bullock's deposition in February 2018, during which her testimony was almost comical in its implausibility and flagrant obfuscation, it became apparent that this representation was false," prompting the parties to begin negotiating a new document discovery protocol. (Doc. No. 88 at 1 (internal quotation marks and brackets omitted); Doc. No. 66 at 3, 7.) The parties eventually reached an agreement on that new protocol in August 2018; almost immediately, however, Bullock backtracked and refused to produce any new documents, citing her Fifth Amendment act-of-production privilege. (Doc. No. 88 at 2–3.)

In June 2020, the Court issued an order declaring that Bullock had waived any such privilege and directing her "to resume the document review protocol previously agreed to by the parties." (Doc. No. 66 at 15.) Though Bullock complied with the Court's order and eventually

completed her productions two months later (Doc. No. 78 at 7; Doc. No. 88 at 3), that did not end the parties' discovery disputes.

After reviewing Bullock's productions, Gorsoan requested three additional categories of documents, as well as the opportunity to depose Bullock again. (Doc. No. 88 at 4.) Bullock objected to those requests, primarily arguing that Gorsoan had waived these issues by failing to raise them either during the parties' negotiations around the August 2018 discovery protocol or in earlier correspondence with the Court. (*Id.*)

On November 23, 2020, the Court granted in part and denied in part the relief that Gorsoan sought. (*See generally* Doc. No. 88.) Specifically, the Court determined that while Bullock was not required to review or produce any additional emails, she *was* obligated to collect hard copy documents and bank account statements that were responsive to Gorsoan's three new discovery requests. (*Id.* at 6–9.) In addition, the Court ordered Bullock to sit for another deposition. (*Id.* at 9–10.)

One month later, Bullock filed a letter with the Court indicating that she had substantially completed her remaining production obligations, with the exception of certain foreign language documents held by her counsel in Switzerland (the "Foreign Documents"), which she asserted fell beyond the scope of discovery in this action, both as a matter of law and in light of the 2014 Order, which limited the territorial reach of discovery to the United States.[1] (Doc. No. 91.) On January 12, 2021, having received no response from Gorsoan, the Court issued an order concluding that Bullock had satisfied her production obligations, and directing the parties to proceed with Bullock's deposition. (Doc. No. 92.)

---

[1] Bullock's letter indicated that some of these documents have been sent to her United States counsel so that her counsel could offer her legal advice as part of the instant dispute. (Doc. No. 91 at 3 n.1; Doc. No. 95 at 3 n.1.)

3

Just two days later, Gorsoan filed a letter indicating that it had reached out to Bullock about several concerns Gorsoan had with her recent production, including Bullock's decision to not produce the Foreign Documents. (Doc. No. 93; *see also* Doc. No. 93-1.) Later that same day, Bullock responded with a letter of her own, explaining that she had already addressed each of Gorsoan's concerns, other than the Foreign Document issue. (Doc. No. 95 at 1–2.) As for those documents, Bullock reiterated that they fell outside the scope of discovery in this action. (*Id.* at 2–4.) Bullock also submitted a declaration from her Swiss counsel, which stated that the Foreign Documents are composed of various files produced by a Swiss prosecutor as part of the prosecutor's disclosure obligations, and that, under Swiss law, Bullock's lawyer "cannot be compelled to . . . produce such documents." (Doc. No. 97-1 ¶¶ 2–4.)

On January 18, 2021, Gorsoan submitted a response to Bullock's recent filings, agreeing that Bullock had rectified most of the problems with her recent production but again asserting that Bullock was obligated to produce the Foreign Documents.[2] (Doc. No. 98.) Specifically, Gorsoan takes the position that the 2014 Order's limitation on the scope of discovery is no longer binding in this case in light of an intervening decision by the Second Circuit in 2019, which made clear that § 1782 has extraterritorial reach. (*Id.* at 2–3.) Separately, Gorsoan argues that Bullock has identified no Swiss laws that would categorically prohibit the production of the Foreign Documents in this action, nor any other reason why Gorsoan's discovery request should not be granted. (*Id.* at 4–7.) Bullock submitted yet another response the following day. (Doc. No. 99.)

---

[2] Gorsoan's letter makes one passing reference in a footnote to "the paucity of bank records" in Bullock's production and Bullock's failure thus far to indicate whether she has online access to those bank accounts. (Doc. No. 98 at 2 n.2.) But other than note that a dispute exists, Gorsoan's letter supplies no reason to think that Bullock's production is incomplete, nor does Gorsoan explain why this issue is sufficiently material to warrant delaying Bullock's deposition or to otherwise require court intervention.

## II.     Law of the Case

As a threshold matter, the Court must determine whether the 2014 Order's holding that Gorsoan's subpoena is "to be read as seeking only documents located in the United States" is still the law of the case. *Gorsoan*, 2014 WL 7232262, at *10. "The law of the case doctrine 'forecloses reconsideration of issues that were decided – or that could have been decided – during prior proceedings.'" *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020) (quoting *United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007)); *see also Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7–8 (2d Cir. 1996) (explaining that "[t]he law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case" (internal quotation marks omitted)). While this rule is not absolute, courts deviate from it only when "cogent and compelling reasons militate" against its application. *E. Lyme Bd. of Educ.*, 962 F.3d at 662 (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). Such reasons exist where (i) there has been an intervening change in controlling law, (ii) new evidence has become available, or (iii) there is a need to correct a clear error or prevent manifest injustice. *See Johnson*, 564 F.3d at 99–100; *United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir. 1989); *see also* 18B Charles Alan Wright *et al.*, Federal Practice & Procedure: Jurisdiction and Related Matters § 4478 (2d ed.) (hereinafter, "Wright & Miller"). The Court agrees with Gorsoan that there has been an intervening change in controlling law since Judge Gardephe's 2014 ruling.

The 2014 Order concluded that, as a matter of law, § 1782 "does not authorize a court to compel a party to produce documents located abroad." *See Gorsoan*, 2014 WL 7232262, at *10 (relying on *In re Kreke Immobilien KG*, No. 13-mc-110 (NRB), 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013); and *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 n.5

5

(S.D.N.Y. 2006)). The Second Circuit has since rejected that conclusion, declaring that "a district court is not categorically barred from allowing discovery under § 1782 of evidence located abroad." *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019); *see also Pfaff v. Deutsche Bank AG*, No. 20-mc-25 (KPF), 2020 WL 3994824, at *10 (S.D.N.Y. July 15, 2020) (noting that *del Valle Ruiz* abrogated *Kreke*); *In re Top Matrix Holdings Ltd.*, No. 18-mc-465 (ER), 2020 WL 248716, at *5 n.4 (S.D.N.Y. Jan. 16, 2020) (noting that *del Valle Ruiz* abrogated both *Kreke* and *Microsoft*). *Del Valle Ruiz* therefore constitutes the very sort of intervening change in controlling law that supplies a compelling reason to deviate from the traditional law of the case doctrine and to revisit the territorial reach of Gorsoan's subpoena in this action.

Bullock's arguments to the contrary are unpersuasive. First, Bullock suggests that Gorsoan is foreclosed from raising this issue because Gorsoan had to opportunity to challenge the 2014 Order's holding on appeal and failed to do so. (Doc. No. 99 at 2.) Of course, Bullock is correct that the law of the case doctrine applies to any issue that could have been challenged in an ensuing appeal, regardless of whether a challenge was actually raised. *See E. Lyme Bd. of Educ.*, 962 F.3d at 662; *United States v. Ben Zvi*, 242 F.3d 89, 96 (2d Cir. 2001). But that does not mean that, where a party fails to challenge an issue on appeal, the law of the case therefore applies without exception. Instead, it means only that the party "who has chosen not to argue a point on a first appeal" cannot "stand better as regards the law of the case than one who had argued and lost." *Ben Zvi*, 242 F.3d at 96 (quoting *County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir. 1997)). In other words, while a party cannot use the failure to appeal an issue as a means of circumventing the law of the case doctrine, that issue is still subject to later reevaluation if cogent and compelling circumstances, such as a change in controlling law, demand it.

Second, Bullock suggests that *del Valle Ruiz* does not constitute a *change* in controlling law because, prior to that decision, there was no controlling precedent within this Circuit on whether § 1782 has extraterritorial reach. (Doc. No. 99 at 2.) In essence, Bullock argues that this exception to the law of the case doctrine applies only when settled precedent is changed, not when the Court of Appeals addresses an issue of first impression. The Court disagrees.

Bullock has identified no cases in which a court has explicitly drawn this distinction.[3] Rather, her argument is premised on a hyper-literal interpretation of the word "change." The problem for Bullock is that courts have alternatively described this exception as satisfied where "controlling authority has since made a contrary decision of the law applicable to [the] issues" in question. *See* Wright & Miller § 4478 (quoting *White v. Murtha*, 377 F.2d 428, 432 (5th Cir. 1967)); *Soper v. Simmons Int'l, Ltd.*, 632 F. Supp. 244, 255 n.27 (S.D.N.Y. 1986) (same); *E.W. Kalkin, Inc. v. Fieldcrest Mills, Inc.*, No. 80-cv-1368 (JFK), 1985 WL 2252, at *1 (S.D.N.Y. Aug. 6, 1985) (same). As a result, where an intervening decision is from a controlling authority, it provides an exception to the law of the case doctrine if it either changes an old rule or announces a new one. *See United States v. Lanese*, 937 F.2d 54, 57 (2d Cir. 1991) (explaining that the law of the case doctrine was overcome where the intervening decision in *United States v. Perdomo* addressed an issue that was previously undecided in the Circuit)[4]; *see also Kalin v. Xanboo, Inc.*, No. 04-cv-5931 (RJS), 2009 WL 928279, at *12 n.5 (S.D.N.Y. Mar. 30, 2009) (noting that the law of the case was still applicable because, although there was a split of authority among district

---

[3] For instance, Bullock relies on *Doe v. East Lyme Board of Education*, noting that the Second Circuit rejected an attempt to circumvent the law of the case doctrine because an intervening Supreme Court decision "[did] not signal a change in the *law of this Circuit*." (Doc. No. 99 at 2 (emphasis Bullock's) (quoting *E. Lyme Bd. of Educ.*, 962 F.3d at 664).) But the Second Circuit was not remarking on the fact that the decision addressed an issue of first impression in the Circuit; rather, it merely indicated that "prior decisions of th[e] Court are consistent with the Supreme Court's [intervening] decision." *E. Lyme Bd. of Educ.*, 962 F.3d at 664 (internal quotation marks and brackets omitted).

[4] Indeed, in *United States v. Perdomo* itself, the Second Circuit expressly acknowledged that it was deciding an issue that it "had not [yet] addressed." 927 F.2d 111, 117 (2d Cir. 1991).

7

courts, the Court of Appeals had yet to resolve the issue). Undoubtedly, *del Valle Ruiz* declared a new and binding rule of law that contradicts the holding in the 2014 Order.

Third, Bullock argues that "the result that Judge Gardephe reached in 2014 [is not] incorrect under current Second Circuit law" as *del Valle Ruiz* left the decision to grant extraterritorial discovery under § 1782 to the district court's discretion. (Doc. No. 99 at 2.) While Bullock is correct that the ultimate outcome the 2014 Order reached is not prohibited under existing precedent, that does not automatically mean that the law of the case doctrine is still applicable.

The argument that Bullock puts forward might be persuasive if the 2014 Order had been premised on an alternative foundation that was left unaffected by the intervening change in law. *See* Wright & Miller § 4478 & n.73 (collecting cases and explaining that "even if there has been a potentially sufficient change" in controlling law, the law of the case doctrine is nevertheless still applicable if "the earlier decision . . . rest[s] on an alternative foundation that makes the change immaterial"). But that is clearly not the case here: the 2014 Order based its holding exclusively on the conclusion that § 1782 has no extraterritorial reach as a matter of law. *See Gorsoan*, 2014 WL 7232262, at *10. So even though the Court *can* reach the same outcome as the 2014 Order on prudential grounds, that does not mean that it must.

Accordingly, the Court concludes that cogent and compelling reasons require revisiting the issue of whether Gorsoan's subpoena should be limited to documents located in the United States.

### III.     Extraterritorial Discovery

*Del Valle Ruiz* is clear that even though § 1782 has extraterritorial reach, whether to grant such extraterritorial discovery rests in the sound discretion of the district court. *See* 939 F.3d at 533. In exercising that discretion, courts are to consider the four factors identified in *Intel Corp.*

8

*v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). *See del Valle Ruiz*, 939 F.3d at 533. Those factors are as follows:

(1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";

(2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";

(3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and

(4) whether the request is "unduly intrusive or burdensome."

*Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Intel*, 542 U.S. at 264–65). Notably, these factors should not "be applied mechanically," and courts must "take into account any other pertinent issues arising from the facts of the particular dispute." *Id.* at 245. Where a § 1782 applicant seeks extraterritorial discovery, "the location of [the] documents and other evidence" is clearly such a pertinent issue. *Del Valle Ruiz*, 939 F.3d at 533.

**A.    First *Intel* Factor**

Bullock is a named party in the Cyprus proceeding. Ordinarily, that fact would "counsel[] against granting" § 1782 discovery. *Kiobel*, 895 F.3d at 245. But Bullock's repeated refusals to comply with her discovery obligations in Cyprus caused Judge Gardephe to ultimately conclude that this prong tips in Gorsoan's favor. *See Gorsoan*, 2014 WL 7232262, at *6–7; *see also Gorsoan*, 652 F. App'x at 9 (concluding that this decision was not an abuse of discretion). While the Court will not revisit Judge Gardephe's prior conclusion, it bears noting that this factor, even if it does favor Gorsoan, does so only by the barest of margins. Accordingly, the Court affords it very little weight.

9

B. **Second *Intel* Factor**

As with the first factor, the considerations informing the second *Intel* factor are unchanged since the 2014 Order was issued. Specifically, "there is no evidence that the Cyprus tribunal would be unreceptive to U.S. federal-court assistance." *Gorsoan*, 2014 WL 7232262, at *8. Accordingly, this prong also favors Gorsoan.

C. **Third *Intel* Factor**

Bullock's primary argument concerning the third *Intel* factor is that the Foreign Documents that Gorsoan seeks are protected under Swiss Civil Procedure Code Article 166 and Swiss Criminal Procedure Code Article 171. (Doc. No. 95 at 2–3.) Those provisions, translated into English, read in pertinent part:

> **Art. 166 Limited right to refuse**
>
> . . . .
>
> The confidants of other legally protected secrets may refuse to cooperate if they show credibly that the interest in keeping the secret outweighs the interest in establishing the truth.
>
> **Art. 171 Right to refuse to testify due to professional confidentiality**
>
> Members of the clergy, lawyers, defen[s]e lawyers, notaries, patent attorneys, doctors, dentists, pharmacists, psychologists and assistants to such persons may refuse to testify in relation to confidential matters that have been confided to them or come to their knowledge in the course of their professional work.

Civil Procedure Code [CPC] Dec. 19, 2008, SR 272, art. 166, para. 2 (Switz.); Criminal Procedure Code [CrimPC] Oct. 5, 2007, SR 312, art. 171, para. 1 (Switz.).

Reduced to its simplest form, Bullock's argument is that, because her attorney cannot be forced to disclose confidential information that he gained during his representation of Bullock, these Swiss government files are protected from discovery under Swiss law. The problem for Bullock, however, is that she has identified no Swiss laws saying that *she* (as opposed to her

10

attorney) cannot be compelled to produce those documents or waive any privilege associated with them (if any exists) – indeed, the declaration from Bullock's Swiss counsel was careful to frame these Swiss rules as directed at lawyers rather than at their clients.[5]  (Doc. No. 97-1 ¶ 3.)  In other words, the Swiss laws on which Bullock relies focus exclusively on what a lawyer may be required to disclose, not on what documents the lawyer's client can shield through claims of privilege.  And it is this latter issue that is relevant here.

The Court therefore concludes that Bullock has not demonstrated that Swiss law would prohibit the production of the Foreign Documents.  In fact, Bullock's Swiss counsel readily admits that it is possible that Gorsoan could gain access to the Foreign Documents through Swiss legal proceedings.  (*Id.* ¶ 6 ("To the extent that Gorsoan . . . wish[es] to access the material obtained by my firm from Swiss prosecutors, [it] may apply to the proper authorities in Switzerland.  Access would then be determined in accordance with the procedural rules of this nation").)

Separately, although not an argument raised by Bullock, the Court notes that requiring her to produce the Foreign Documents would not undermine the goal of promoting "full and frank communication between attorneys and their clients," an outcome that the Second Circuit has cautioned against where §1782 discovery is concerned.  *Kiobel*, 895 F.3d at 247 (internal quotation marks omitted).  To understand why, it is useful to compare this case to the facts in *Kiobel*.  There, the target of the § 1782 application was a foreign corporation's New York-based law firm.  *Id.* at 240–41.  The Second Circuit explained that granting the discovery that the petitioner sought might cause foreign clients to "fear disclosing all pertinent documents to U.S. counsel" and incentivize those entities to take steps to avoid potential disclosure issues, such as requiring their

---

[5] That Bullock does not have the documents in her physical possession makes no difference.  "Documents in the possession of a party's attorney may be considered within the control of the party."  *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 180 (S.D.N.Y. 2013) (internal quotation marks omitted).

11

U.S. law firms to "return documents . . . (or destroy them) as soon as litigation concludes" – an outcome the court said should be avoided if possible. *Id.* at 247–48. Here, by contrast, it is Bullock herself who is the subject of the discovery application, and the documents in question were provided to her Swiss lawyer by foreign law enforcement officials and do not appear to contain privileged communications between Bullock and her counsel or her counsel's own work product. (Doc. No. 97-1 ¶¶ 2, 4.) Accordingly, even if the Court were to grant discovery, there is little reason to fear that future attorney-client communications would be jeopardized, since the documents in question are reachable under § 1782 regardless of whether they are in Bullock's personal possession or her lawyer's.[6]

Therefore, since Bullock bears the burden of demonstrating that the production of documents would conflict with foreign law, *see In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019), the Court concludes that this factor weighs in favor of Gorsoan.

## D.     **Fourth *Intel* Factor**

As for the last factor, the Court acknowledges that the discovery that Gorsoan seeks has already been closely tailored and is limited to only a few discrete categories of hard-copy documents. (*See* Doc. No. 88 at 8–9.) But other than the small handful of files Bullock brought to this country for purposes of receiving legal advice, the Foreign Documents are located abroad and in numerous foreign languages. *See del Valle Ruiz*, 939 F.3d at 533 (directing courts to consider the location of documents). So not only would granting discovery into these documents require Bullock to move them across international borders, but it would likely also require her to

---

[6] The lone exception to this conclusion is the handful of documents that Bullock sent to her United States counsel for purposes of obtaining legal advice in connection with this proceeding. (Doc. No. 95 at 3 n.1.) Obviously, the disclosure of those documents, in isolation, would effectively punish Bullock for seeking legal advice, which is precisely what the Second Circuit counseled against in *Kiobel*. *See* 895 F.3d at 247–48. But since the full set of Swiss documents were not provided by Bullock to Swiss counsel for the purpose of obtaining legal advice, their production would not implicate the concerns articulated in *Kiobel*.

either engage additional foreign counsel or translate the documents into English so that the documents can be reviewed for responsiveness and privilege before Bullock produces them. Because those burdens will continue to exist no matter how the Court tailors the discovery in this case, the Court concludes that this factor weighs against production.

**E.     Additional Contextual Considerations**

While the *Intel* factors are a critical component in the discretionary decision to grant § 1782 discovery, as noted above, they cannot be applied in a vacuum.  *See Kiobel*, 895 F.3d at 245. Context matters.  And here, the context surrounding this request strongly counsels against granting Gorsoan the discovery it seeks.

To start, this § 1782 proceeding has been ongoing in one form or another since 2013.  In light of that duration, expanding the scope of discovery now, particularly without any indication that the Foreign Documents are uniquely important, cannot be justified.  (*See* Doc. No. 90 (indicating that "further delay [in this matter] cannot be justified" given that it has been pending for nearly eight years).)  That is particularly true given the significant amount of discovery that Gorsoan has already received from Bullock. (Doc. No. 95 at 2; *see also* Doc. No. 88 at 8.)

Perhaps even more important, however, is the belated nature of Gorsoan's request to revisit the scope of discovery.  *Del Valle Ruiz* was decided in October 2019.  Instead of immediately seeking to reopen the question of extraterritorial discovery, Gorsoan waited until January 2021 – more than 14 months – to broach the subject.[7]  Indeed, in setting the scope of Bullock's remaining

---

[7] Gorsoan gave no serious indication that it believed the scope of discovery should be expanded prior to this time.  In fact, in the appeal following the 2014 Order, Gorsoan effectively admitted that the limited scope was appropriate under the circumstances, as it acknowledged that Judge Gardephe "tailored the discovery requests to be no broader than necessary when [he] provided that the subpoena[] reached only documents located in the United States." Petitioners-Appellees' Br. at 31 n.4, *Gorsoan Ltd. v. Bullock*, No. 15-057 (2d Cir. Jan. 26, 2016), ECF No. 69.  And in November 2020 – more than a year after *del Valle Ruiz* was decided – Gorsoan referenced "the scope of the Court-Ordered subpoena in this case" as grounds for granting Gorsoan additional discovery into hard copy documents, but never suggested that the scope of the subpoena should be expanded to include foreign documents. (Doc. No. 87 at 3.)

production obligations in November 2020, the Court and Bullock were under the impression that Gorsoan's requests were limited to documents found within the United States. Accordingly, it would be inappropriate to rewrite the territorial scope of discovery now, *after* the Court already granted Gorsoan's requests.

\* \* \*

As noted above, the *Intel* factors do not conclusively favor either party. Nevertheless, the context surrounding Gorsoan's request, along with the record as a whole, convinces the Court that it would be inappropriate and unduly time-consuming to order Bullock to produce the Foreign Documents at this belated stage. As a result, and having considered all the other arguments the parties raised in their various letters, the Court concludes that Bullock has – at long last – completed her production obligations in this case, and that the parties may now move to the final act in this long-running drama: Bullock's deposition.

### IV.   Conclusion

For the foregoing reasons, the Court DENIES Gorsoan's request to expand the scope of discovery in this case to reach the Foreign Documents. As a result, the parties shall proceed with Bullock's deposition no later than 21 days after the date of this order.

SO ORDERED.

Dated:   January 25, 2021
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

14