UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of GORSOAN LIMITED and
GAZPROMBANK OJSC for an Order Pursuant
to 28 U.S.C. § 1782 to Conduct Discovery for
Use in a Foreign Proceeding.

No. 17-cv-5912 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

On November 23, 2020, the Court ordered Janna Bullock to produce additional documents to Petitioners Gazprombank OJSC and its assignee Gorsoan Limited (together, "Gorsoan") in response to new document requests that Gorsoan had propounded. (Doc. No. 88.)[1] In so doing, the Court concluded that Gorsoan's new requests sought documents that were "for use" in a foreign proceeding. (*Id.* at 6–7.) Just two months later, however, the Second Circuit issued a decision potentially calling into question that conclusion. *See Gorsoan Ltd. v. Sundlun* (*In re Gorsoan Ltd.*), --- F. App'x ---, 2021 WL 299286 (2d Cir. 2021). In light of that decision, Bullock has asked the Court to reconsider its prior order and direct Gorsoan to destroy the additional documents that Bullock produced. (Doc. No. 101; *see also* Doc. No. 104.) For the reasons set forth below, the Court DENIES Bullock's request.

## I. Background

In August 2012, Gorsoan sued Bullock and a host of other defendants in Cyprus, alleging that between 2005 and 2008, the defendants diverted more than $20 million in bond proceeds owed to Gorsoan. (Doc. No. 66 at 1; Doc. No. 100 at 1; Dkt. 13-mc-397, Doc. No. 4 ¶¶ 20, 23, 26.) Shortly after that case was initiated, the Cyprus court entered an order freezing Bullock's assets

---

[1] Unless otherwise indicated, all record citations are to Dkt. 17-cv-5912, and references to page numbers correspond to the page numbers provided in the ECF legend atop the filing, not to the filing's own pagination.

worldwide and requiring her to disclose the existence of all her assets worth more than 10,000 Euros.  (Doc. No. 66 at 1–2.)  After growing frustrated with Bullock's failure to comply with that order, Gorsoan filed an application under 28 U.S.C. § 1782 in this district, seeking discovery related to the Cyprus dispute, including discovery into Bullock's assets.  (Doc. No. 100 at 1; Doc. No. 66 at 2.)  According to that statutory provision, an applicant may seek discovery in federal court that is "for use in a [separate] proceeding in a foreign or international tribunal."  28 U.S.C. § 1728(a).

Judge Gardephe, to whom the case was assigned, promptly granted Gorsoan's subpoena request.  (Dkt. 13-mc-397, Doc. No. 6.)  Shortly thereafter, Bullock moved to quash Gorsoan's subpoena; while she did not dispute that Gorsoan had met the statutory requirements to be eligible for discovery under § 1782, she argued that discovery should be denied on discretionary grounds.  (Dkt. 13-mc-397, Doc. Nos. 12–13.)  Judge Gardephe reaffirmed his prior order, *see In re Gorsoan Ltd.*, No. 13-mc-397 (PGG), 2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014), and the Second Circuit affirmed, *see Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016).  Nevertheless, even after these decisions, Bullock refused to comply with certain aspects of Gorsoan's subpoena and Judge Gardephe's order.  (Doc. No. 66 at 2.)

Eventually, the parties' dispute came before this Court as a miscellaneous matter pursuant to Part I in October 2016.  (*Id.*)  Only after this Court held Bullock in contempt under Federal Rule of Civil Procedure 45(g) did she begin to comply with the subpoena at issue.  (*Id.*)

Bullock thereafter claimed to have "fully complied with her document discovery obligations in January 2017."  (Doc. No. 88 at 1 (internal quotation marks omitted).)  But following Bullock's deposition in February 2018, during which "[h]er testimony was almost comical in its implausibility and flagrant obfuscation," it became apparent that this representation was false.

(Doc. No. 66 at 3.) "Bullock answered 'I don't know' approximately 180 times, disclaiming knowledge on basic questions such as who paid property taxes on the penthouse apartment where she lived, who paid for her daughter's private school tuition, who paid for her daughter's Porsche, whether she had received any tax bills in the last year and whether she was working with a tax professional or tax attorney, whether anyone owed her money, and roughly how much her monthly expenses were." (*Id.* at 3–4 (internal citations omitted).) Bullock even went so far as to proclaim that "she did not 'have any assets' or 'control any assets or entities,' including any bank accounts, debit cards, or credit cards, and that she did not keep cash on hand."[2] (*Id.* at 4 (internal citations omitted).)

Of particular note was Bullock's testimony regarding a multimillion-dollar property in Southampton, New York. (*Id.*) Bullock testified initially that she had no ownership interest in the property, and that she was merely some sort of property manager that performed groundskeeping functions there (though, apparently for no money). (*Id.* at 4–5.) But "[a]fter Gorsoan suspended the deposition due to concerns over the veracity of Bullock's answers, Bullock's counsel produced – for the first time – three documents related to the sale of" that property, "including a Bargain and Sale Deed that Bullock herself had signed on behalf of the seller" (*id.* at 6 (internal citations omitted), which indicated that Bullock had recently sold the Southampton property for almost $30 million (Doc. No. 25 at 2; Doc. No. 37 at 4).

At a conference two months later, the Court held Bullock in contempt and, in light of Bullock's belated disclosure of that sale deed, directed the parties to confer on a discovery protocol that would cover the clearly significant amount of remaining relevant but unproduced material in

---

[2] Despite this testimony, "Bullock has [somehow] managed to pay [various] sanctions [ordered in this case], not to mention a parade of attorneys who have appeared on her behalf in these and related proceedings." (Doc. No. 66 at 20 n.5.)

Bullock's possession. (Doc. No. 66 at 6–7.) Following that conference, the parties began a multi-month-long negotiation about the contours of that protocol. (Doc. No. 88 at 2.) Eventually, the parties agreed on a discovery plan that would require Bullock to produce emails that were sent or received through November 2016. (Doc. No. 78-2 at 3; Doc. No. 80 at 8; Doc. No. 85 at 1; Doc. No. 88 at 3.) Almost immediately after reaching that agreement, however, Bullock backtracked and attempted to assert a Fifth Amendment objection, requiring the Court to compel her to produce these materials. (Doc. No. 88 at 2–3; *see generally* Doc. No. 66.) Bullock finally completed those productions in August 2020. (Doc. No. 88 at 3; Doc. No. 78 at 7.)

While all this was going on, in September 2018, Gorsoan filed a separate § 1782 application in the Southern District of New York, which was eventually assigned to Judge Abrams, seeking similar asset discovery from Bullock's family and one of her business associates. (Dkt. 18-mc-431, Doc. No. 1.) Bullock intervened and moved to quash those subpoenas, arguing, among other things, that they did not satisfy the statutory "for use" requirement in § 1782. (Dkt. 18-mc-431, Doc. No. 27 at 18–23.)

In January 2020, Judge Abrams denied Bullock's motion. *See In re Gorsoan Ltd.*, 435 F. Supp. 3d 589 (S.D.N.Y. 2020). Judge Abrams explained that Gorsoan's proposed use of this discovery, to prepare a contempt motion in Cyprus, was plainly "for use" in that proceeding. In particular, she highlighted the fact that if Gorsoan's motion was successful, it "could limit (or even preclude) Bullock's ability to defend herself on the merits." *Id.* at 601. Bullock promptly appealed that ruling to the Second Circuit. (Dkt. 18-mc-431, Doc Nos. 44–46.)

In October 2020, while that appeal was pending, Gorsoan submitted a letter in this case, raising three new document requests. (Doc. No. 78 at 1–4.) Specifically, Gorsoan sought (1) all account statements created between August 8, 2012 through the present for bank accounts owned

4

by Bullock at six specific banks; (2) all documents created between August 8, 2012 through the present concerning 17 of Bullock's assets and/or payment obligation; and (3) all documents, irrespective of their creation dates, concerning the "Landmark Trust," a particular trust affiliated with Bullock and the Southampton property.  (Doc. No. 88 at 4.)

Bullock objected to those requests, arguing that they were not "for use" in the Cyprus proceeding.  Her argument, which was essentially identical to what she had argued before Judge Abrams, was that information related to her bank accounts and assets "significantly post-date[d] the alleged fraud (2005–2007) [and so was] . . . unlikely to bear on the fraud itself."  (Doc. No. 85 at 3 (internal quotation marks omitted).)  Gorsoan countered that (i) Bullock had waived this statutory argument by failing to raise it earlier; (ii) this asset discovery could be used to prepare a contempt motion in Cyprus; and (iii) "asset discovery is permitted under [§] 1782."  (Doc. No. 87 at 2–3.)

On November 23, 2020, the Court largely granted Gorsoan's motion.  (*See generally* Doc. No. 88.)  As relevant here, the Court agreed with Judge Abrams's "for use" analysis, explaining that "should this discovery show that Bullock flouted the Cyprus court's order, Gorsoan . . . can seek a preclusive contempt order in that court, which could hamstring Bullock's defenses to Gorsoan's fraud claim."[3]  (*Id.* at 7.)  Bullock did not appeal.

But just two months later, in January 2021, the Second Circuit issued a summary order overturning Judge Abrams's decision and concluding that the asset discovery that Gorsoan sought from Bullock's family and business associate did not meet the statutory "for use" requirement. *See Sundlun*, 2021 WL 299286, at *3.  In particular, the court concluded that "Gorsoan has failed

---

[3] In addition to granting Gorsoan additional discovery, the Court ordered Bullock to sit for another deposition.  (Doc. No. 88 at 9–10.)  Gorsoan now indicates, however, that it "agrees to forgo Bullock's deposition."  (Doc. No. 103 at 2.)

to show that a contempt motion in Cyprus is anything more than a possibility, and a possibility is not enough" to satisfy § 1782. *Id.* And absent that rationale, the court determined that Gorsoan had articulated no other basis on which to conclude that the asset discovery it sought was "for use" in the Cyprus proceeding. *Id.* at *2–3.

Only days after that decision was issued, Bullock filed a letter asking this Court to reconsider its November 2020 order and to direct Gorsoan to destroy the documents that it received pursuant to that order. (Doc. No. 101 at 2; *see also* Doc. No. 104 at 1.) Bullock opposed that motion, asserting that "discovery concerning assets constitutes a sufficient basis to satisfy the 'for use' prong of [§] 1782." (Doc. No. 103 at 4.)

## II.   Discussion

Discovery sought under § 1782 must be "for use in a proceeding before a foreign tribunal." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998) (quoting 28 U.S.C. § 1782(a)). "By adopting the phrase 'for use,' Congress plainly meant to require that § 1782 applicants show that the evidence sought is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015) (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)). "The key question, therefore, is not simply whether the information sought is relevant, but whether the [§ 1782 applicant] will actually be able to *use* the information in the [foreign] proceeding." *Id.*; *see also Mees*, 793 F.3d at 299 (holding that "[u]nder § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success").

Up until now, Gorsoan's primary argument for how its new discovery requests seeking information about Bullock's current assets can be used in the Cyprus proceeding has been that such materials could form the basis of a contempt motion. (Doc. No. 87 at 2–3.) While both this

Court and Judge Abrams accepted that rationale, (Doc. No. 88 at 6–7); *Gorsoan*, 435 F. Supp. 3d at 600–01, the Second Circuit determined that the mere possibility that Gorsoan might pursue a contempt order in the future was simply "too remote to satisfy § 1782," *Sundlun*, 2021 WL 299286, at *2; *see also Certain Funds*, 798 F.3d at 123 (explaining that the "the applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated"). And following that ruling, Gorsoan has walked away from this rationale altogether, declaring that it "no longer intends to file a contempt motion." (Doc. No. 103 at 2.)

In light of these developments, Bullock argues that Gorsoan's recent document requests do not satisfy the statutory "for use" requirement and so were "improvidently granted." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 96 (2d Cir. 2020). Of course, the Court expressly rejected several of Bullock's present arguments in its November 2020 order, an order which Bullock did not appeal. (Doc. No. 88 at 6–7.) While such a failure would ordinarily preclude a party from later seeking reconsideration of the issue before the district court, *see Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 662 (2d Cir. 2020) (law of the case); *Amerex Grp., Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 201 (2d Cir. 2012) (waiver), Bullock argues that's not the case here because the statutory requirements of § 1782 are jurisdictional in nature, and the Court has an independent obligation to confirm that its prior order was not issued absent subject-matter jurisdiction (Doc. No. 104 at 3). The Court agrees.

The requirement that documents sought under § 1782 be "for use" in a foreign proceeding is not a discretionary or equitable consideration – it is a statutory command. *See* 28 U.S.C. § 1782(a). And as a statutory command, it implicates the Court's authority to grant Gorsoan the relief that it seeks. *See Guo v. Deutsche Bank Sec. Inc.* (*In re Guo*), 965 F.3d 96, 102 (2d Cir. 2020)

7

(describing the statutory requirements of § 1782 as "jurisdictional" (internal quotation marks omitted)); *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (same); *Mare Shipping Inc. v. Squire Sanders (US) LLP*, 574 F. App'x 6, 8 (2d Cir. 2014) (referring to the statutory elements as "mandatory, jurisdictional factors"); *In re Sumar*, 123 F.R.D. 467, 471 (S.D.N.Y. 1988) (holding that because "the evidence is sought for use" in a foreign proceeding, "th[e] [c]ourt has subject matter jurisdiction under 28 U.S.C. § 1782"); *see also Kaiser Grp. Int'l, Inc. v. World Bank*, 420 F. App'x 2, 4 (D.C. Cir. 2011) (indicating that the statutory requirements of § 1782(a) go to the court's subject-matter jurisdiction).  As a result, Bullock's failure to appeal the Court's prior ruling cannot supply the Court with jurisdiction that it would otherwise lack.  *See Marcella v. Cap. Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46–47 (2d Cir. 2002); *Cangemi v. United States*, No. 12-cv-3989 (JS), 2017 WL 1274060, at *6 n.9 (E.D.N.Y. Mar. 31, 2017); *Walsh v. McGee*, 918 F. Supp. 107, 112 (S.D.N.Y. 1996); 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4478 (2d ed.) (recognizing that "the nature of some issues may encourage reconsideration[,] the most obvious [of which] is . . . federal subject-matter jurisdiction").

But the Court's obligation to assure itself of jurisdiction is a double-edged sword.  While Bullock cannot waive a jurisdictional impediment, the Court is also able to – indeed, is required to – consider potential bases for its jurisdiction beyond those that Gorsoan articulates in its letters. And in this case, having reviewed the record and procedural history, the Court is easily able to conclude that the asset discovery Gorsoan seeks is "for use" in the Cyprus proceeding.

To start, in a decision that was neither acknowledged in nor questioned by *Sundlun*, the Second Circuit expressly held that discovery into Bullock's assets years after the alleged fraud had concluded nonetheless satisfied the "for use" component of § 1782.  Gorsoan's initial subpoena,

8

which it served on Bullock in 2013 (Dkt. 13-mc-397, Doc. No. 7), contained two requests seeking information about Bullock's assets and her compliance with the Cyprus court's order:

(i) "[d]ocuments sufficient to comply with paragraph 2 of the [Cyprus court's] Freezing and Disclosure Order, by which [Bullock] w[as] ordered to provide information regarding [her] assets exceeding €10,000 in value anywhere in the world"; and

(ii) "[d]ocuments describing the location and nature of any and all [a]ssets . . . held under . . . three [particular] trusts."

(Dkt. 13-mc-397, Doc. No. 3 at 34–35). Notably, Gorsoan did not limit those requests to the period immediately following the alleged fraud (which ran through 2008). (Dkt. 13-mc-397, Doc. No. 4 ¶¶ 20, 23.) Rather, the requests sought documents through "the date of [Bullock's] compliance with th[e] subpoena." (Dkt. 13-mc-397, Doc. No. 3 at 34–35.)

Judge Gardephe determined that Gorsoan's requests concerning Bullock's current assets were plainly "for use" in the Cyprus proceeding. *See Gorsoan*, 2014 WL 7232262, at *2, *5. The Second Circuit agreed. *See Gorsoan*, 652 F. App'x at 8. In so doing, the Second Circuit confirmed that asset discovery post-dating the alleged fraud by, at that point, eight years, was nonetheless "for use" in the Cyprus proceeding. And following that decision, Bullock agreed to collect and produce documents that were created through November 2016. (Doc. No. 78-2 at 3; Doc. No. 80 at 8; Doc. No. 85 at 1; Doc. No. 88 at 3.)

Gorsoan's new requests – which target documents concerning particular assets and Bullock's bank account statements – seek the same type of material as its original subpoena; Gorsoan has simply extended the cut-off date for discovery from 2016 until 2020. While Bullock suggests that documents created after 2016 are unlikely to bear on a fraud that ended in 2008 (Doc. No. 85 at 3, 5), that same argument, if meritorious, would have applied equally to documents created *before* 2016. Indeed, any decay in the relevance of this information to the Cyprus proceeding between 2016 and 2020 is marginal at best. So, in concluding that Gorsoan's initial

document requests were "for use" in a foreign proceeding, the Second Circuit's 2016 decision implicitly rejected Bullock's present argument. Not only was this conclusion not affected by the more recent decision in *Sundlun*, but it is binding on this Court.

In any event, Gorsoan's document requests are clearly "for use" in the Cyprus proceeding. There are plenty of ways in which information about Bullock's assets is likely to be relevant to Gorsoan's case-in-chief. *See Mees*, 793 F.3d at 295, 298 (explaining that so long as the discovery sought is "something that will be employed with some advantage or serve some use in the proceeding," "an applicant may satisfy the statute's 'for use' requirement even if the discovery [it] seeks is not necessary for [it] to succeed in the foreign proceeding"). For instance, it is probable that the allegedly diverted bond proceeds could be traced through Bullock's assets. Another possibility is that if Bullock is shown to be moving or hiding assets, that could suggest a willfulness on her part that would support a finding of fraud. It is therefore not surprising that Gorsoan now represents to the Court that it "intend[s] to introduce th[is] material in the Cyprus trial against Bullock . . . with respect to Bullock's credibility and role in the scheme (including the mechanisms by which the assets were transferred)." (Doc. No. 103 at 5.) Several of these were undoubtedly the potential uses that informed Judge Gardephe's and the Second Circuit's prior rulings in this case, and they support Gorsoan's argument now.

Granting Gorsoan this discovery is further supported by Bullock's repeated bad faith tactics, including, among other things, her flagrantly perjurious testimony during her 2018 deposition. (Doc. No. 88 at 6 (stating that "given the Court's limited trust in Bullock's candor, the Court agrees with Gorsoan that some additional[] . . . discovery is likely warranted").) Much of that testimony concerned the present state of her assets. (Doc. No. 66 at 3–6.) Since the Court has the authority to ensure that parties are complying with its discovery orders, and to punish parties

10

when they fail to do so, *see* Fed. R. Civ. P. 37; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (concluding that "[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates . . . so as to achieve the orderly and expeditious disposition of cases" (internal quotation marks omitted)), it was entirely reasonable to require Bullock to produce additional documents to determine whether her testimony and representations to the Court were truthful.[4]

\* \* \*

Put simply, Judge Gardephe and the Second Circuit already concluded that asset discovery that post-dated the alleged fraud by more than a half decade was nevertheless "for use" in the Cyprus proceeding. That reasoning is no less compelling with respect to Bullock's post-2016 assets, particularly since any delay in the collection of materials from the original subpoenas was occasioned by Bullock's own outrageous misconduct. And as in 2013, and 2016, there are myriad ways in which information about Bullock's assets could be useful to a fraud case about improperly diverted bond proceeds. On top of all that, Bullock's repeated bad faith and gamesmanship compelled the Court to grant Gorsoan additional discovery to ensure that Bullock was complying with her obligations and the Court's orders. Together, then, Gorsoan's discovery requests plainly sought documents "for use" in the Cyprus proceeding, and the Court's prior order is not called into question by the Second Circuit's decision in *Sundlun*.

### III. Conclusion

For the foregoing reasons, the Court DENIES Bullock's request, and reaffirms its prior decision that Gorsoan's discovery requests "relating to 17 alleged assets and six banks" are "for

---

[4] This is an especially important tool in a § 1782 proceeding because the typical sanction for a party's evasion of its discovery obligations, drawing an adverse inference, is unavailable in such a proceeding. (Doc. No. 66 at 9–10.)

11

use" in a foreign proceeding. (Doc. No. 101 at 2.) At this point, because document production is now complete and Gorsoan has withdrawn its request to depose Bullock (Doc. No. 103 at 2), there are no remaining issues outstanding. Accordingly, the Court respectfully directs the Clerk of Court to close this case.

SO ORDERED.

Dated: February 22, 2021
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation